**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

_____

**DAVID HARRIS,**

                                        **Plaintiff,**

        **vs.**                                                    **5:20-CV-01057**
                                                                   **(MAD/ATB)**

**AMERICAN ACCOUNTING**
**ASSOCIATION, LISA DE SIMONE,**
**MATHEW EGE, and BRIDGET**
**STROMBERG,**

                                        **Defendants.**

_____

**APPEARANCES:**                              **OF COUNSEL:**

**DAVID HARRIS**
4919 Briarwood Lane
Manlius, New York 13104
Plaintiff, *Pro Se*

**WILSON ELSER MOSKOWITZ**              **ANDREW S. HOLLAND, ESQ.**
**EDELMAN & DICKER, LLP**               **PETER A. LAURICELLA, ESQ.**
200 Great Oaks Boulevard, Suite 228     **OLIVIA ORLANDO, ESQ.**
Albany, New York 12203
Attorneys for Defendant American
Accounting Association

**WARD GREENBERG HELLER &**             **THOMAS S. D'ANTONIO, ESQ.**
**REIDY LLP**
1800 Bausch & Lomb Place
Rochester, New York 14604
Attorney for Defendant American
Accounting Association

**OFFICE OF THE TEXAS ATTORNEY**        **H. MELISSA MATHER, AAG**
**GENERAL**
P.O. Box 12548, MC017
Austin, Texas 78711
Attorney for Defendants De Simone,
Ege, and Stromberg

**Mae A. D'Agostino, U.S. District Judge:**

**MEMORANDUM-DECISION AND ORDER**

**I. INTRODUCTION**

Plaintiff David Harris commenced this action on September 8, 2020, alleging a claim of unfair competition under New York's common law against Defendants Matthew Edge, Bridget Stromberg, and Lisa De Simone (hereinafter "the Defendant Authors") and the American Accounting Association (hereinafter "Defendant AAA"). *See* Dkt. No. 1. In March 2021, the Defendant Authors and Defendant AAA each separately moved to dismiss the complaint. *See* Dkt. Nos. 34, 35. In response, Plaintiff filed an amended complaint, *see* Dkt. No. 37, as well as responses to Defendants' motions, *see* Dkt. Nos. 38, 39. The Court thereafter issued a text order permitting Defendants to supplement their pending motions, *see* Dkt. No. 42, which Defendants did, *see* Dkt. Nos. 43, 44. While Defendants' motions were pending, Plaintiff filed a letter motion requesting permission to file a motion for sanctions. *See* Dkt. No. 49. The Court denied Plaintiff's request in a text order. *See* Dkt. No. 54.

Currently before the Court are Defendants' respective motions to dismiss the amended complaint. For the reasons that follow, Defendants' motions to dismiss the amended complaint are granted and Defendants are awarded costs and reasonable attorney's fees.

**II. BACKGROUND[1]**

Plaintiff is a professor at Syracuse University and resides in the State of New York. *See* Dkt. No. 37 at ¶ 9. According to the amended complaint, in 2007, Plaintiff and several other

_____

[1] Although the Court presumes the allegations in the amended complaint are true for the purposes of Defendants' motions to dismiss, the amended complaint is replete with conclusory and wholly unsupported allegations against the Defendants. Those portions of the amended complaint are omitted from this recitation. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (holding that the "presumption of truth . . . does not extend to legal conclusions").

2

professors "unofficially published a working paper" on the website of nonparty SSRN,[2] *id.* at ¶ 143, "on the topic of how a firm employing its auditor for non-audit tax consulting services affected the quality of the firm's financial statements," *id.* at ¶ 117.  The paper was updated in 2008.  *See id.* at ¶ 120.  Plaintiff claims that this paper asserted two unique and novel hypotheses; namely, that (1) "[t]here is no association between auditor tax consulting and the likelihood of tax-related [internal control weaknesses ('ICWs')]"; and (2) "[t]here is no association between auditor tax consulting and the likelihood of non-tax-related ICWs."  *Id.* at ¶¶ 121, 126.  Plaintiff's paper ultimately found that auditor tax consulting was significantly associated with a reduced likelihood of receiving any type of ICW.  *See id.* at ¶ 129

The amended complaint next asserts that, in January 2012, the Defendant Authors submitted a paper to Defendant AAA for a presentation at Defendant AAA's upcoming national meeting.  *See id.* at ¶ 163.  At this time, the Defendant Authors appear to have been serving as either teaching assistants or research assistants at the University of Texas at Austin.  The January 2012 paper asserted a hypothesis and result identical to Plaintiff's first hypothesis and result, but did not cite or make reference to Plaintiff's paper.  *See id.* at ¶ 163, 181.  The Defendant Authors' January 2012 paper did cite to an unrelated research paper published in 2011 that, in turn, cited to Plaintiff's paper.  *See id.* at ¶¶ 174, 175.  In their January 2012 paper, the Defendant Authors claimed to "extend prior literature" and stated that, "to [their] knowledge, no study has examined the link between" auditor tax consulting and the likelihood of tax related ICWs.  *See id.* at ¶¶ 190, 193.  The Defendant Authors' paper was accepted for presentation at Defendant AAA's national meeting and, in August 2012, the Defendant Authors presented the paper.  *See id.* at ¶¶ 202, 203.

---

[2] According to the amended complaint, SSRN "electronically publishes preliminary work in-progress [papers], referred to as working papers, without substantive review or comment."  *See* Dkt. No. 37 at ¶ 46.

In July 2012, the Defendant Authors published their paper on SSRN's website.  *See id.* at

¶ 209.  In this version of the paper, the Defendant Authors removed their prior statement that no

study had examined this topic, and replaced it with a brief reference to Plaintiff's paper:

> [T]o our knowledge, no published paper addresses the relation
> between tax NAS and tax internal control quality, which is a
> significant determinant of financial reporting quality.  In
> unpublished work, Elder, Harris and Zhou (2008) examine the
> relation between tax NAS and reported material weaknesses in
> internal controls from 2004-2005.  The authors find that tax NAS
> are associated with fewer reported tax and non-tax material
> weaknesses, and attribute the result to a lack of auditor
> independence.

*See id.* at ¶ 223.  Plaintiff contacted Defendant De Simone via email in August 2012 to notify the

Defendant Authors that their paper "pretty much duplicates part of" Plaintiff's paper.  Dkt. No.

37-12 at 1; Dkt. No. 37 at ¶ 240.  Defendant De Simone replied that they were "aware of

[Plaintiff's] paper and cite[d] [his] work," and that they had examined the topic "using a different

sample, method[,] and theory."  Dkt. No. 37-12 at 1.

In September 2012, the Defendant Authors published another version of their paper on

SSRN.  *See* Dkt. No. 37 at ¶ 241.  The September 2012 version of this paper had been expanded

to include a hypothesis and result identical to Plaintiff's second hypothesis and result.  *See id.*

The September 2012 paper also slightly changed the citation to Plaintiff's paper, referring to that

paper as a "concurrent working paper" rather than an unpublished work.  *Id.* at ¶ 254.  The

Defendant Authors published two more versions of their paper on SSRN in October and

November 2012.  *See id.* at ¶ 275.

In November 2012, the Defendant Authors submitted a version of their paper to The

Accounting Review for publication.  *See id.* at ¶ 297.  The Accounting Review is a publication of

Defendant AAA and an "official, premier journal."  *Id.*  In April 2013, Plaintiff sent an email to

the editor of The Accounting Review asserting that the Defendant Authors were "plagiarizing Plaintiff's paper, along with a complete and detailed statement of the facts, copies of Plaintiff's prior working papers and [the Defendant Authors'] prior offending papers, and an analysis of applicable rules." *Id.* at ¶ 298; *see also* Dkt. No. 37-8.  Plaintiff did not receive a response from The Accounting Review's editor.  *See* Dkt. No. 37 at ¶ 309.

In June 2013, Plaintiff submitted his own paper to The Accounting Review for publication.  *See id.* at ¶ 310.  In August 2013, The Accounting Review notified Plaintiff that it was rejecting his paper, in large part, because it asserted the same hypotheses and results as the Defendant Authors' paper.  *See id.* at ¶¶ 312-19.  Ultimately, Defendant AAA and The Accounting Review published the Defendant Authors' paper online in October 2014, and physically published the same paper in July 2015.  *See id.* at ¶ 331.  The final version of the Defendant Authors' paper contained the same "extending the literature" language found previously, *id.* at ¶ 335, and noted that their findings were "consistent" with the findings in Plaintiff's paper, *id.* at ¶ 356.  The final paper also contained "a full and honest citation" to Plaintiff's paper, specifically:

> Elder et al. (2008) were the first to examine the association between tax NAS and internal control quality, finding that tax NAS are associated with fewer reported tax and non-tax material weaknesses from 2004-2006.  In their revision, Harris and Zhou (2013) submit that tax NAS should benefit tax and non-tax internal control quality through knowledge spillover, but that there should be greater knowledge spillover benefits to tax internal control quality. Contrary to their prediction, they find a greater benefit of tax NAS on non-tax internal control quality and conclude that this is possibly because of independence impairment and/or because auditors "bring to the client's attention more non-tax internal control problems than other tax consultants" (Harris and Zhou 2013, 32).

Dkt. No. 37-15 at 10-11.

The amended complaint asserts that, "[u]nlike prior working-paper versions of [the

Defendant Authors'] plagiarizing paper, this final, peer[]-reviewed and officially-published version was financially and professionally severely injurious [to] Plaintiff." Dkt. No. 37 at ¶ 397. Specifically, the amended complaint alleged that the final publication of the Defendant Authors' paper (1) "destroyed" the value of Plaintiff's paper, *id.* at ¶ 413; (2) "prevented Plaintiff from submitting and publishing his paper in" any "journal of similar, premier, academic repute," *see id.* at ¶¶ 351-52; and (3) caused Plaintiff to lose an increase to his salary of "between 3% and 10% . . . over the balance of his professional life" that otherwise would have accrued if he had been able to publish his paper, *id.* at ¶ 417.

## III. DISCUSSION

The Defendant Authors argue that Plaintiff's amended complaint should be dismissed as against them because (1) the Court lacks personal jurisdiction over them, (2) Plaintiff lacks standing to bring this action, (3) Plaintiff has failed to state a claim upon which relief can be granted, and (4) Plaintiff's claim is barred by the statute of limitations. *See* Dkt. Nos. 35, 44. The Defendant Authors also adopt the arguments made by Defendant AAA. *See* Dkt. No. 44 at 12. Defendant AAA argues that Plaintiff's amended complaint should be dismissed as against it because (1) Plaintiff has failed to state a claim upon which relief can be granted, and (2) Plaintiff's claim is barred by the statute of limitations. *See* Dkt. Nos. 34, 43. Defendant AAA also argues that it is entitled to its costs and reasonable attorney's fees pursuant to N.Y. Civil Rights Law §§ 70-a and 76-a. *See* Dkt. No. 34-2 at 24-29; Dkt. No. 43 at 14-15. Plaintiff opposes both motions. *See* Dkt. Nos. 39, 41, 45, 46.

## A.    Standard of Review

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the party's claim for relief. *See Patane v.*

*Clark*, 508 F.3d 106, 111-12 (2d Cir. 2007) (citation omitted).  In considering the legal sufficiency, a court must accept as true all well-pleaded facts in the pleading and draw all reasonable inferences in the pleader's favor.  *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citation omitted).  This presumption of truth, however, does not extend to legal conclusions.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Although a court's review of a motion to dismiss is generally limited to the facts presented in the pleading, the court may consider documents that are "integral" to that pleading, even if they are neither physically attached to, nor incorporated by reference into, the pleading.  *See Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002)).

To survive a motion to dismiss, a party need only plead "a short and plain statement of the claim," *see* Fed. R. Civ. P. 8(a)(2), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief[,]'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007) (quotation omitted). Under this standard, the pleading's "[f]actual allegations must be enough to raise a right of relief above the speculative level," *see id.* at 555 (citation omitted), and present claims that are "plausible on [their] face," *id.* at 570.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.* (quoting *Twombly*, 550 U.S. at 557).  Ultimately, "when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," *Twombly*, 550 U.S. at 558, or where a plaintiff has "not nudged [its] claims across the line from conceivable to plausible, the[ ] complaint must be dismissed," *id.* at 570.

7

Courts must afford *pro se* plaintiffs "special solicitude" before granting motions to dismiss or motions for summary judgment. *See Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994). "A document filed *pro se* is 'to be liberally construed,' . . . and 'a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). "This policy of liberally construing *pro se* submissions is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quotation omitted). Therefore, courts read *pro se* filings "to raise the strongest arguments that they suggest." *Id.* at 474.

## B.  Personal Jurisdiction[3]

The Defendant Authors argue that the amended complaint should be dismissed as against them for lack of personal jurisdiction. *See* Dkt. No. 35-2 at 11-20; Dkt. No. 44 at 6-8; Dkt. No. 47 at 5-10. Specifically, the Defendant Authors assert that (1) this Court lacks general jurisdiction over them because the amended complaint does not allege that any of them are domiciled in New York or have consented to jurisdiction in New York; and (2) this Court lacks specific jurisdiction over them because the amended complaint did not allege that any of them

---

[3] In their motion, the Defendant Authors argue that Plaintiff lacks standing to bring this action because the amended complaint has alleged only speculative and hypothetical injuries that are insufficient to establish an injury in fact. *See* Dkt. No. 35-2 at 20-23. In the amended complaint, however, Plaintiff alleges that in June 2013, he submitted his own paper to The Accounting Review for publication, which was rejected, in large part, because it asserted the same hypotheses and results as the Defendant Authors' paper. *See* Dkt. No. 37 at ¶¶ 312-19. Regardless of the other somewhat speculative injuries Plaintiff claims in his amended complaint, the Court finds that this is a sufficiently specific, non-speculative injury to satisfy the Article III standing requirement.

transacted business in New York, were present in New York when the conduct occurred, or reasonably expected publication of their paper to have consequences in New York and derived a substantial benefit from interstate commerce.  *See* Dkt. No. 35-2 at 11-20.  The Defendant Authors also assert that the amended complaint does not allege sufficient grounds for the Court to obtain specific jurisdiction over them under a conspiracy or agency theory of jurisdiction.  *See* Dkt. No. 44 at 6-8; Dkt. No. 47 at 5-10.  In opposition, Plaintiff argues that the amended complaint alleges sufficient facts to support specific jurisdiction over the Defendant Authors under either the conspiracy or agency theories of jurisdiction.  *See* Dkt. No. 39 at 10-12; Dkt. No. 46 at 8-17.

### 1. Legal Standard for Determining Personal Jurisdiction

"The available statutory bases [for personal jurisdiction] in federal courts are enumerated by Federal Rule of Civil Procedure 4(k)."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012).  In this case, the only potential basis for personal jurisdiction is Rule 4(k)(1)(A), which establishes personal jurisdiction over a defendant "who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located."  Fed. R. Civ. P. 4(k)(1)(A).  Accordingly, a court must "look first to the law of the State of New York" and if New York law confers personal jurisdiction, "then determine whether asserting jurisdiction under [the law] would be compatible with requirements of due process established under the Fourteenth Amendment."  *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 315 (1945)).  "There are two ways that New York exercises personal jurisdiction over non-residents: general jurisdiction pursuant to N.Y. CPLR § 301 . . . or specific jurisdiction pursuant to N.Y. CPRL § 302."  *Thackurdeen v. Duke Univ.*, 130 F. Supp. 3d 792, 798 (S.D.N.Y. 2015) (citation omitted), *aff'd*, 660 Fed. Appx. 43 (2d

Cir. 2016).

Where a party moves to dismiss an action for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant. *See In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003) (citing *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996)). Prior to discovery, a plaintiff may survive a Rule 12(b)(2) motion to dismiss by pleading in good faith legally sufficient allegations of jurisdiction. *See id.* That is, where a court relies only upon the pleadings and supporting affidavits, a plaintiff need only make a *prima facie* showing of personal jurisdiction over a defendant. *See Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d Cir. 2005); *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 364 (2d Cir. 1986).

"A *prima facie* showing of jurisdiction 'does not mean that plaintiff must show only some evidence of jurisdiction; it means that plaintiff must plead facts which, if true, are sufficient in themselves to establish jurisdiction.'" *Tamam v. Fransabank Sal*, 677 F. Supp. 2d 720, 725 (S.D.N.Y. 2010) (quotation omitted). "'[C]onclusory non-fact-specific jurisdictional allegations' or 'legal conclusion[s] couched as a factual allegation' will not establish a prima facie showing of jurisdiction." *DeLorenzo v. Viceroy Hotel Group, LLC*, 757 Fed. Appx. 6, 8 (2d Cir. 2018) (quoting *Jazini v. Nissan Motor Co., Ltd.*, 148 F.3d 181, 185 (2d Cir. 1998)). Finally, while a court is to assume the truth of all well-pleaded factual allegations that support a finding of personal jurisdiction, *see Ball v. Metallurgie Hoboken-Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990), it should "'not draw argumentative inferences in the plaintiff's favor,'" *In re Terrorist Attacks on September 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (quoting *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 507 (2d Cir. 1994)).

### *2. General Jurisdiction*

New York's Civil Practice Law and Rules confers general personal jurisdiction "over persons, property, or status as might have been exercised heretofore." N.Y. C.P.L.R. § 301. "'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile.'" *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014) (quotation omitted). "Domicile is 'the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning.'" *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000) (quotation omitted).

Plaintiff has not made a *prima facie* case for general jurisdiction over the Defendant Authors pursuant to New York law. Plaintiff's amended complaint does not allege—nor does Plaintiff argue—that any of the Defendant Authors are domiciled in New York. Indeed, it appears from the amended complaint that, at the time this action was commenced, Defendant De Simone was domiciled in Texas, Defendant Ege was domiciled in Texas, and Defendant Stomberg was domiciled in Indiana.

### *3. Specific Jurisdiction*

As noted above, a federal court may look to the long-arm statute of the state in which it sits to establish a statutory basis for the exercise of personal jurisdiction over a defendant under Rule 4(k)(1)(A) of the Federal Rules of Civil Procedure. New York's law arm statute provides, in relevant part:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state; or
>
> * * *

3. commits a tortious act without the state causing injury to person
or property within the state . . . , if he

(i) regularly does or solicits business, or engages in any other
persistent course of conduct, or derives substantial revenue from
goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have
consequences in the state and derives substantial revenue from
interstate or international commerce.

N.Y. C.P.L.R. § 302(a).

Even construing the amended complaint and Plaintiff's opposition papers in the light most

favorable to Plaintiff, Plaintiff has not established a *prima facie* showing of specific jurisdiction

over the Defendant Authors.  Plaintiff argues that the amended complaint makes a *prima facie*

showing of jurisdiction over the Defendant Authors under N.Y. C.P.L.R. § 302(a)(1) and

§ 302(a)(3).  Plaintiff, however, does not allege or argue that the Defendant Authors *directly, in*

*person,* (1) transacted any business within the state or contracted anywhere to supply goods or

services in the state, as required by section 302(a)(1); (2) regularly did or solicited business, or

engaged in any other persistent course of conduct, or derived substantial revenue from goods used

or consumed or services rendered in the state, as required by section 302(a)(3)(i); or (3) derived

substantial revenue from interstate or international commerce, as required by section

302(a)(3)(ii).  *See* Dkt. No. 39 at 10-11; Dkt. No. 46 at 11-17.  Rather, Plaintiff argues that the

Defendant Authors are subject to personal jurisdiction in this Court because the Defendant

Authors have (1) joined in a conspiracy with Defendant AAA, who Plaintiff alleges has

committed a tort in New York; or (2) acted through an agent—specifically Defendant AAA or

SSRN—over whom Plaintiff alleges that this Court has personal jurisdiction.  *See* Dkt. No. 39 at

10-11; Dkt. No. 46 at 11-17.

### a. The Conspiracy Theory of Jurisdiction

New York's long-arm statue gives courts personal jurisdiction over "any non-domiciliary" who "through an agent . . . commits a tortious act within the state." N.Y. C.P.L.R. § 302(a)(2). "Courts have defined 'agent' under the statute to include 'co-conspirators.'" *Rudersdal v. Harris*, 18-CV-11072, 2021 WL 2209042, *15 (S.D.N.Y. Feb. 27, 2021) (quoting *In re Terrorist Attacks on September 11, 2001*, 349 F. Supp. 2d 765, 805 (S.D.N.Y. 2005)). In order to properly allege a conspiracy theory of jurisdiction, a plaintiff "must allege that (1) a conspiracy existed; (2) the defendant participated in the conspiracy; and (3) a co-conspirator's overt acts in furtherance of the conspiracy had sufficient contacts with a state to subject that co-conspirator to jurisdiction in that state." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018).

"Although New York does not recognize an independent cause of action for civil conspiracy, allegations of civil conspiracy are permitted 'to connect the actions of separate defendants with an otherwise actionable tort.'" *Cohen Brothers Realty Corp. v. Mapes*, 181 A.D.3d 401, 404 (1st Dep't 2020) (quoting *Alexander & Alexander of N.Y. v. Fritzen*, 68 N.Y.2d 968, 969 (1986)); *see also McSpedon v. Levine*, 158 A.D.3d 618, 621 (2d Dep't 2018). "To establish a claim of civil conspiracy, the plaintiff must demonstrate the primary tort, plus the following four elements: an agreement between two or more parties; an overt act in furtherance of the agreement; the parties' intentional participation in the furtherance of a plan or purpose; and resulting damage or injury." *Cohen Brothers Realty Corp.*, 181 A.D.3d at 404; *see also In re Terrorist Attacks on September 11, 2001*, 440 F. Supp. 2d 281, 285–86 (S.D.N.Y. 2006).

"'[T]he bland assertion of conspiracy or agency is insufficient to establish jurisdiction for the purposes of section 302(a)(2).'" *Chrysler Capital Corp. v. Cent. Power Corp.*, 778 F. Supp. 1260, 1266 (S.D.N.Y. 1991) (quoting *Lehigh Valley Industries, Inc. v. Birenbaum*, 527 F.2d 87, 93–94 (2d Cir. 1975)). "'[P]roof of unilateral action does not suffice;'" rather, "'[c]ircumstances

must reveal a unity of purpose or a common design and understanding, or a meeting of minds in an unlawful arrangement.'" *Gelboim v. Bank of Am. Corp.*, 823 F.3d 759, 781 (2d Cir. 2016) (quoting *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012)).   "[A] 'complaint alleging merely parallel conduct is not sustainable.'" *Id.* (quoting *Anderson News, L.L.C.*, 680 F.3d at 184).   Although "[t]he line separating conspiracy from parallelism is indistinct," a conspiracy may be distinguished by "allegations of 'interdependent conduct,' 'accompanied by circumstantial evidence and plus factors.'" *Id.* (quoting *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 136 (2d Cir. 2013)).   Those plus factors include, but are not limited to, "(1) 'a common motive to conspire'; (2) 'evidence that shows that the parallel acts were against the apparent individual economic self-interest of the alleged conspirators'; and (3) 'evidence of a high level of interfirm communications.'" *Id.* (quotation omitted).

Even assuming that the amended complaint adequately alleged the primary tort,[4] the amended complaint still fails to allege any facts that go beyond mere parallel conduct.   The factual allegations in the amended complaint that Plaintiff relies on for his conspiracy allegation boil down to the following: in April 2013, Plaintiff sent an email to the editor of The Accounting Review which claimed that the Defendant Authors were plagiarizing Plaintiff's paper.   *See* Dkt. No. 37 at ¶ 298.   This email included "a detailed discussion of exactly how [the Defendant Authors'] work plagiarized and unfairly claimed credit for Plaintiff's work."   *Id.* at ¶ 301.   The amended complaint then alleges that Defendant AAA reviewed, criticized, and made suggestions for revision of the Defendant Authors' paper and, in October 2014, published the final version of Defendant Authors' paper online.   *See id.* at ¶¶ 331, 339.   Plaintiff then reaches the legal

---

[4] Notably, as detailed below, the amended complaint does not adequately allege a *prima facie* case of unfair competition.

conclusion[5] that—because Defendant AAA "was fully informed" of his claims and published the Defendant Authors' paper anyway—Defendant AAA "knowingly and intentionally" entered into a conspiracy with Defendant Authors to "publish their fraudulent claims to have been the first originators of Plaintiff's work and to destroy the value of it to him." *Id.* at ¶¶ 153, 178.

Defendant AAA's mere knowledge of Plaintiff's plagiarism claim, however, is palpably insufficient to establish that Defendants' actions were anything other than "merely parallel conduct." The amended complaint does not provide any circumstantial support for the common motive that Plaintiff alleges—namely, to economically benefit from plagiarizing Plaintiff's paper. Nor does it show that Defendants' actions—here, the Defendant Authors' submission and Defendant AAA's publication of the paper—were against the apparent individual economic self-interest of Defendants. Indeed, Defendants do not appear to have deviated from normal procedure at all in the process of publishing this paper. Accordingly, the amended complaint does not establish a *prima facie* case for specific jurisdiction over the Defendant Authors under a conspiracy theory of jurisdiction.

### b. The Agency Theory of Jurisdiction

"It is well established that a defendant can 'purposefully avail itself of a forum by directing its agents or distributors to take action there.'" *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 84 (2d Cir. 2018) (quoting *Daimler AG v. Bauman*, 571 U.S.117, 135 n.13 (2014)). Under New York's long arm statute, "there is jurisdiction over a principal based on the acts of an agent where 'the alleged agent acted in New York for the benefit of, with the knowledge and consent of, and under some control by, the nonresident principal.'" *Id.* (quotation omitted); *see*

---

[5] To the extent Plaintiff asserts that the Court is required to accept his legal conclusions as true, *see, e.g.,* Dkt. No. 46 at 8, as noted above, the presumption of truth does not extend to legal conclusions. *See Iqbal*, 556 U.S. at 678.

*also Kreutter v. McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988).  "'The critical factor is the degree of control the defendant principal exercises over the agent.'"  *Am./Intl. 1994 Venture v. Mau*, 146 A.D.3d 40, 55 (2d Dep't 2016) (quotations omitted).  "Although the long-arm statute and the Due Process Clause are not technically coextensive, the New York requirements (benefit, knowledge, some control) are consonant with the due process principle that a defendant must have 'purposefully availed itself of the privilege of doing business in the forum.'"  *Charles Schwab Corp.*, 883 F.3d at 84 (quotation omitted).

The amended complaint does not establish a *prima facie* case for specific jurisdiction over the Defendant Authors under an agency theory of jurisdiction.  Plaintiff's argument rests on his allegation that—because Defendant AAA and SSRN published the Defendant Authors' paper on their website "at the behest of" the Defendant Authors—Defendant AAA and SSRN acted as agents in New York for the benefit of, and with the knowledge and consent of, the Defendant Authors.  The amended complaint, however, fails to adequately allege that the Defendant Authors had any control over the critical action at issue here—the decision to publish the paper on Defendant AAA and SSRN's websites.  Although the amended complaint describes the Defendant Authors' control over the publishing process as "very substantial" and "considerable,"  *see* Dkt. No. 37 at ¶¶ 27, 50, Plaintiff conflates the Defendant Authors' control over the contents of their paper with Defendant AAA and SSRN's control over what they publish.  More specifically, the amended complaint thoroughly elaborates on the Defendant Authors' ability to write, edit, review, and submit their paper *before* publication, but fails to allege that the Defendant Authors had any ability to control Defendant AAA and SSRN's ultimate decision to publish their paper.[6]  Indeed,

---

[6]  Plaintiff's reliance on *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361 (2d Cir. 1986), for the proposition that an agency relationship can be formed where the principal has minimal or no control over the agent, is misplaced.  *See* Dkt. No. 46 at 12-13.  Although *Naughton* initially

Plaintiff concedes that even SSRN—which, according to the amended complaint, has far fewer restrictions on what it will publish on its website—retains control over what they ultimately publish. *See* Dkt. No. 46 at 14 ("SSRN exercises some oversight [and] does not publish everything that is sent to it, and certainly does not automatically and blindly do so").

Accordingly, the amended complaint must be dismissed as against the Defendant Authors for lack of personal jurisdiction.

## C.      The Statute of Limitations

Defendants argue that Plaintiff's claims must be dismissed because the statute of limitations for an unfair competition claim is three years. *See* Dkt. No. 34-2 at 12-13; Dkt. No. 35-2 at 28-29. Defendants also argue that, should both a six year statute of limitations and the continuing tort doctrine apply to Plaintiff's claim, the only claim surviving the limitations period would be the October 2014 publication of the Defendant Authors' paper. *See* Dkt. No. 34-2 at 12-13. In opposition, Plaintiff argues that a six year statute of limitations applies to his claim, and that it either did not begin to run until 2014, when his alleged injuries were sustained, or that the continuing tort doctrine applied to his claim, rendering it timely. *See* Dkt. No. 39 at 16-21.

The statute of limitations periods for unfair competition claims have been treated disparately in New York. *See Greenlight Cap., Inc. v. GreenLight (Switzerland) S.A.*, No. 04 CIV. 3136, 2005 WL 13682, *7–8 (S.D.N.Y. Jan. 3, 2005); *Mario Valente Collezioni, Ltd. v. AAK Ltd.*, 280 F. Supp. 2d 244, 258 (S.D.N.Y. 2003), *on reconsideration*, No. 02 CIV. 0099, 2004 WL 724690 (S.D.N.Y. Mar. 26, 2004); *Ediciones Quiroga, S.L. v. Fall River Music, Inc.*, No. 93 CIV. 3914, 1995 WL 103842, *8 (S.D.N.Y. Mar. 7, 1995), *on reconsideration in part*, No. 93 CIV.

---

notes that "[s]ome courts have also required the principal to exercise 'some control' over the agent," the court ultimately holds that "some control *is necessary* to establish agency for jurisdictional purposes." *Naughton*, 806 F.2d at 366 (emphasis added).

3914, 1995 WL 366287 (S.D.N.Y. June 20, 1995).  In this case, this Court finds that Plaintiff's unfair competition claim sounding in reverse passing off more closely resembles that of fraud, rather than an injury to property, and, accordingly, holds that the most appropriate statute of limitations period is the six-year period for fraud claims pursuant to New York Civil Practice Law and Rules ("CPLR") § 213(8).  *See Errant Gene Therapeutics, LLC v. Sloan-Kettering Inst. for Cancer Rsch.*, 182 A.D.3d 506, 508 (1st Dep't 2020); *Kwan v. Schlein*, 441 F. Supp. 2d 491, 503 (S.D.N.Y. 2006); *Greenlight Cap., Inc.*, 2005 WL 13682, at *8; *Carell v. Shubert Org., Inc.*, 104 F. Supp. 2d 236, 260 (S.D.N.Y. 2000).

Under CPLR § 213(8), New York fraud claims must be commenced within "the greater of six years from the date the cause of action accrued or two years from the time the plaintiff . . . discovered the fraud, or could with reasonable diligence have discovered it."  N.Y. C.P.L.R. § 213(8).  "A claim based on fraud accrues as soon as the claim becomes enforceable, *i.e.*, when all elements of the tort can be truthfully alleged in a complaint."  *Graham v. HSBC Mortg. Corp.*, No. 18-CV-4196, 2021 WL 4392522, *4 (S.D.N.Y. Sept. 24, 2021) (quotations ommited); *see also IDT Corp. v. Morgan Stanley Dean Witter & Co.*, 12 N.Y.3d 132, 140 (2009).  Multiple instances of  unfair competition "occurring over a period of time can give rise to liability as a continuing tort," allowing a plaintiff to "recover for any instances of reverse passing off that occurred within the past six years."  *Kwan*, 441 F. Supp. 2d at 503; *Express Gold Cash, Inc. v. Beyond 79, LLC*, No. 1:18-CV-00837, 2019 WL 4394567, *5 (W.D.N.Y. Sept. 13, 2019); *Greenlight Cap., Inc.*, 2005 WL 13682, at *8 n.9; *but see Enzo Biochem, Inc. v. Amersham PLC*, 981 F. Supp. 2d 217, 227 (S.D.N.Y. 2013) ("[U]nfair competition is not a continuing tort").

Plaintiff commenced this action on September 8, 2020.  The five publications of the Defendant Authors' paper forming the basis of Plaintiff's claim occurred in January 2012

(submission to Defendant AAA's national meeting), July 2012 (working version published on SSRN), September 2012 (same), November 2012 (same), and October 2014 (final version published by Defendant AAA).  *See* Dkt. No. 37 at ¶¶ 174, 208, 241, 275, 331.  Of these publications, only the October 2014 publication of the final version of the Defendant Authors' paper is within the six year limitations period.[7]

Accordingly, Plaintiff's claim is limited by the statute of limitations to the October 2014 publication of the final version of the Defendant Authors' paper.

**D.    Failure to State a Claim**

Defendant AAA argues that Plaintiff's unfair competition claim is preempted by the Copyright Act and, in any event, that the amended complaint fails to plead sufficient factual content to allow the Court to draw a reasonable inference that Defendants are liable under Plaintiff's unfair competition claim.  *See* Dkt. No. 34-2 at 13-17.  The Defendant Authors also argue that the amended complaint has failed to state a cognizable claim for unfair competition. *See* Dkt. No. 35-2 at 23-27.  In opposition, Plaintiff argues that (1) his claim is not preempted by the Federal Copyright Act, *see* Dkt. No. 45 at 19-26; and (2) the amended complaint has sufficiently pled a claim of entitlement to relief for unfair competition, *see* Dkt. No. 37-1 at 21.

*1. Preemption by the Copyright Act*

Defendant AAA argues that Plaintiff's claim is preempted by the Federal Copyright Act because (1) it is grounded solely in the copying of Plaintiff's academic paper, a protected expression under the Copyright Act; and (2) an unfair competition claim based on a theory of

---

[7] Plaintiff discovered Defendants' alleged fraud, at the latest, in April 2013, when he emailed the editor of The Accounting Review to inform them that the Defendant Authors' paper was plagiarizing his own paper, *see* Dkt. No. 37 at ¶ 298, nearly seven and a half years before this action was commenced.

reverse passing off contains no element to qualitatively differentiate it from those areas protected by copyright.  *See* Dkt. No. 34-2 at 10.  In opposition, Plaintiff argues that his unfair competition claim is not preempted because (1) it is not based solely in the copying of his academic paper, but rather based on "explicit false claims of origin"; and (2) New York's common law unfair competition claim requires the pleading of extra elements—namely, "deception of the public" and "actual confusion."  Dkt. No. 45 at 19, 22, 23.

"The Copyright Act exclusively governs a claim when: (1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, and (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106."  *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004) (citing 17 U.S.C. § 301(a)); *see also In re Jackson*, 972 F.3d 25, 42–43 (2d Cir. 2020); *Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 982 F.2d 693, 716–17 (2d Cir. 1992).  "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'"  *Briarpatch Ltd., L.P.*, 373 F.3d at 305 (quotation omitted).

The subject matter requirement "looks at the work that would be affected by the plaintiff's exercise of a state-created right, and requires (as an essential element of preemption) that the work 'come within the subject matter of copyright as specified by sections 102 and 103.'"  *In re Jackson*, 972 F.3d at 42 (quoting 17 U.S.C. § 301(a)).  "Accordingly, if the work against which the plaintiff claims rights is a 'literary work[ ],' . . . or any other category of 'work[ ] of authorship' within the 'subject matter of copyright' (even if the subject of the claim is for some reason ineligible for copyright protection) the plaintiff's claim is subject to the possibility of statutory preemption."  *Id.* at 43-44 (quotation & citation omitted).  "A work need not consist entirely of

copyrightable material in order to meet the subject matter requirement, but instead need only fit into one of the copyrightable categories in a broad sense." *Briarpatch Ltd., L.P.*, 373 F.3d at 305.

"The general scope requirement is satisfied only when the state-created right may be abridged by an act that would, by itself, infringe one of the exclusive rights provided by federal copyright law." *Id.* (citing *Computer Assocs.*, 982 F.2d at 716). "In other words, the state law claim must involve acts of reproduction, adaptation, performance, distribution or display." *Id.* (citing 17 U.S.C. § 106; *Computer Assocs.*, 982 F.2d at 716). Additionally, "the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim." *Id.*

Here, Plaintiff's claim does not meet the subject matter requirement of claim preclusion under the Copyright Act. As Defendant AAA states, Plaintiff is not claiming that Defendants plagiarized the language of Plaintiff's paper. *See* Dkt. No. 34-2 at 10. Rather, Plaintiff claims that Defendants copied the *ideas* contained in that paper, and then falsely represented that the Defendant Authors were the first to explore those ideas. *See, e.g.,* Dkt. No. 45 at 33-34 ("'[T]heft' of Plaintiff's work is not the basis of Plaintiff's cause of action. Rather, . . . [h]is complaint is only about their theft of his exclusive right to claim to be the person of such creativity, originality, skill and diligence as to have first created, developed and published exactly this work"). In defining the scope of copyright, the Copyright Act explicitly states that "[i]n no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work." 17 U.S.C. § 102(b). Although it is true that the inclusion of "non-copyrightable material, such as ideas, [is] not sufficient to remove

[a literary work] from the broad ambit of the subject matter categories," *Briarpatch Ltd., L.P.*, 373 F.3d at 306, here, Plaintiff's claim is not focused on preventing Defendants from copying a literary work that happens to contain non-copyrightable material.[8]  Rather, Plaintiff's claim is predicated exclusively on the protection of his research hypotheses and his allegation that Defendants are falsely claiming that they were the first to explore those hypotheses.  *See Universal Instruments Corp. v. Micro Sys. Eng'g, Inc.*, 924 F.3d 32, 48 (2d Cir. 2019) ("Preemption . . . turns on 'what [the] plaintiff seeks to protect, the theories in which the matter is thought to be protected and the rights sought to be enforced'") (quoting *Comput. Assocs.*, 982 F.2d at 716).

Accordingly, the Court need not reach the second part of preclusion under the Copyright Act, the general scope requirement.

### 2. Failure to State a Claim

Defendants argue that Plaintiff's New York common law unfair competition claim "unquestionably fails on the merits" because he has failed to plead sufficient factual content to allow the Court to draw a reasonable inference that Defendants are liable.  *See* Dkt. No. 34-2 at 13-17; Dkt. No. 35-2 at 23-27.  In opposition, Plaintiff argues that the amended complaint sufficiently pleads a claim under a reverse passing off theory of unfair competition.  *See* Dkt. Nos. 37-1, 38, 39, 45, 46.

"[T]he essence of unfair competition under New York common law is 'the bad faith misappropriation of the labors and expenditures of another, likely to cause confusion or to

---

[8]  For that reason, Defendant AAA's reliance on *Ferrarini v. Irgit*, No. 19 CIV. 0096, 2020 WL 122987 (S.D.N.Y. Jan. 9, 2020), is misplaced.  The claim in *Ferrarini* was specifically seeking to vindicate rights that are protected by copyright law—namely, preventing that defendant from reproducing a copyrighted work.  *Id.* at *5.

deceive purchasers as to the origin of the goods.'" *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 34 (2d Cir. 1995) (quotation omitted).  "In a common law unfair competition claim under New York law, the plaintiff must show either actual confusion in an action for damages or a likelihood of confusion for equitable relief," and "there must be some showing of bad faith." *Id.* at 35 (citations omitted).  "'Consumer confusion' may be proved directly by evidence of actual consumer confusion or indirectly by a showing that the copier intended to deceive consumers as to the source of the goods." *Samara Bros. v. Wal-Mart Stores, Inc.*, 165 F.3d 120, 127 (2d Cir. 1998), *rev'd on other grounds*, 529 U.S. 205 (2000).

New York has "long recognized two theories of common-law unfair competition: palming [or passing] off and misappropriation." *ITC Ltd. v. Punchgini, Inc.*, 9 N.Y.3d 467, 476 (2007). "Where unfair competition claims are predicated on a theory of 'passing off,' 'the essence of which is false representation of origin,' courts distinguish between claims for 'passing off' and 'reverse passing off.'" *Genius Media Group Inc. v. Google LLC*, No. 19-cv-7279, 2020 WL 5553639, *14 (E.D.N.Y. Aug. 10, 2020) (quotation and other citations omitted).  "In a 'passing off' case, the tortfeasor misleads customers into believing that the product he produces emanates from another source.'" *Id.* (quotation and other citations omitted).  "A claim of 'reverse passing off,' in contrast, involves 'a claim that the defendant misrepresented the plaintiff's work as its own.'" *Id.* (quotation omitted).[9]

Contrary to Plaintiff's arguments, the amended complaint fails to adequately allege a claim

---

[9] Defendant AAA argues that Plaintiff's claim should be held to the heightened pleading standard of Fed. R. Civ. P. 9(b) because this iteration of unfair competition is based on fraud. *See* Dkt. No. 34-2 at 13.  However, it appears to be unsettled in the Second Circuit whether the heightened pleading standard of Rule 9(b) applies to such claims.  *See Lokai Holdings LLC v. Twin Tiger USA LLC*, 306 F. Supp. 3d 629, 637 n.1 (S.D.N.Y. 2018).  In any event, the Court does not need to decide this issue to decide the motion to dismiss.

for reverse passing off.  Initially, claims under a passing (or palming) off theory rest on "the *sale of the goods* of one manufacturer as those of another."  *ITC Ltd.*, 9 N.Y.3d at 476 (emphasis added).  Plaintiff's publication of his research hypotheses in an academic paper—and Defendants' subsequent publication of the same hypotheses in their own paper—plainly do not involve "the sale of . . . goods" by "manufacturers."  *Id.*; *see also Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 31, 38 (2003) (holding, under the Lanham Act,[10] that reverse passing off claims are limited to literal reproductions and do not encompass the copying of ideas or concepts); *Silverstein*, 522 F. Supp. 2d at 601 (holding, under the Lanham Act, that an author of ideas "may not claim that the producer of the tangible product, by reproducing the author's ideas without proper attribution, has committed an actionable 'false designation of origin'").

Furthermore, the amended complaint fails to allege any support for Plaintiff's conclusory claims of consumer confusion and bad faith.  Specifically, the amended complaint does not allege any actual instances of consumer confusion or any facts that would demonstrate—or even suggest—that Defendants intended to deceive consumers as to the source of the hypotheses at issue or were acting in bad faith.  Indeed, the facts pled in the amended complaint allege the opposite—Defendants' paper specifically acknowledged and cited to Plaintiff's paper in every version of their paper after the first, and the final version of Defendants' paper expressly states that Plaintiff's paper was "the first to examine" these hypotheses.  Dkt. No. 37-15 at 10; *see Waldman Pub. Corp. v. Landoll, Inc.*, 43 F.3d 775, 785 & n.8 (2d Cir. 1994) (holding that there is no false designation of origin under the Lanham Act where proper credit is given to the original

---

[10] Although Plaintiff brings this action under New York common law, not the Lanham Act, Courts have previously noted that "the standards for § 43(a) claims under the Lanham Act and unfair competition claims under New York law are virtually the same."  *Kregos v. Associated Press*, 795 F. Supp. 1325, 1336 (S.D.N.Y. 1992), *aff'd*, 3 F.3d 656 (2d Cir. 1993), *cert. denied*, 510 U.S. 1112 (1994).

source).  Plaintiff's claim that Defendants intended to deceive consumers as to the origin of their

hypotheses through their use of the language "[w]e extend this literature" is similarly implausible

in light of the Defendant Authors' clear citation to Plaintiff's work.[11]

Finally, the Court notes that the only remaining Defendant is AAA, since the Defendant

Authors have been dismissed for lack of personal jurisdiction.  Notably, Defendant AAA is not a

competitor of Plaintiff.  Rather, Defendant AAA is merely the publisher of The Accounting

Review, which published the Defendant Authors' paper.  In *EMI Music Marketing v. Avatar*

*Records, Inc.*, 317 F. Supp. 2d 412 (S.D.N.Y. 2004), the court specifically recognized that to

support an unfair competition claim, the named defendant must necessarily be a competitor.

There, the court rejected an unfair competition claim brought by a musical record distributor

against a record producer, aptly reasoning that "[b]y definition, competition is fundamental to any

unfair competition claim.  Where there is no competition, there can be no unfair competition.

Avatar and EMI are not competitors in any sense of the word.  EMI and Avatar engage in

different businesses.  Avatar produces records and EMI distributes them." *EMI Music Marketing*,

317 F. Supp. 2d at 423; *see also Telecom Int'l Am., Ltd. v. AT & T Corp.*, 280 F.3d 175, 197-98

(2d Cir. 2001) (noting that "New York State unfair competition law 'has been broadly described

as encompassing any form of commercial immorality, or simply as endeavoring to reap where one

has not sown; it is taking the skill, expenditures and labors of a *competitor*, and

misappropriati[ng] for the commercial advantage of one person . . . a benefit or property right

---

[11] Although Plaintiff frequently uses the term "misappropriation" in his amended
complaint, it appears from Plaintiff's various memoranda of law that he only seeks to assert a
claim under a reverse passing off theory of unfair competition.  *See* Dkt. Nos. 37-1, 38, 39, 45,
46.  However, to the extent the amended complaint can be read to assert a claim under a
misappropriation theory, such a claim also fails.  Misappropriation requires an allegation of bad
faith, *see Abe's Rooms, Inc. v. Space Hunters, Inc.*, 38 A.D.3d 690, 692 (2d Dep't 2007), which,
as detailed above, the amended complaint has not adequately alleged.

belonging to another'") (emphasis added).

There is no question that Plaintiff and Defendant AAA are not direct (or even indirect) competitors.  Plaintiff claims that he is a professor who co-authored a self-published research paper via SSRN.  Defendant AAA, on the other hand, is described in the amended complaint as an organization that publishes a peer-reviewed "premier academic accounting research journal." Plaintiff posted on SSRN what he characterizes as "working papers," whereas, by the amended complaint's own assertions, Defendant AAA does not publish mere working papers "because they have not been vetted and endorsed by a knowledgeable, thorough, and independent review and acceptance."  As such, by the very facts alleged, Defendant AAA was categorically incapable of unfairly competing with Plaintiff.

Plaintiff is clearly unhappy with something about how his work was treated in the Defendant Authors' paper or the fact that the Defendant Authors' paper was accepted for publication before Plaintiff was prepared to publish his own findings.  However, there is no dispute that Defendants' paper as published in October 2014 fully cited Plaintiff's working paper and devoted two full paragraphs to discussion of Plaintiff's research and the conclusions he reached.  Plaintiff's amended complaint accuses Defendant AAA of being complicit in the Defendant Authors' purported theft of his research, yet the published manuscript declares that Plaintiff and his co-author were "the first to examine" the underlying principle.  Nothing about expanding on the unpublished academic research of another or disputing the results achieved in that academic research, while providing accurate citation to the other person's research, constitutes unfair competition.

Accordingly, the Court grants Defendants' motions to dismiss in their entirety.[12]

## F.     **Costs and Attorneys Fees**

Defendants seek an award of costs and attorney's fees under New York Civil Rights Law § 70-a.  *See* Dkt. No. 34-2 at 24-29; Dkt. No. 44 at 12-13.  Defendants argue that an award of costs and attorney's fees is permissible because this action involves public petition and participation as defined by New York Civil Rights Law § 76-a, and was commenced or continued without a substantial basis in fact and law.  *See* Dkt. No. 34-2 at 24-29.  Plaintiff does not dispute the applicability of N.Y. Civil Rights Law §§ 70-a and 76-a, instead countering that "the causes of action asserted in the instant case are well supported by New York law and by the facts of the case alleged and proved in the Amended Complaint."  Dkt. No. 45 at 50.

New York State has enacted legislation designed to combat so-called Strategic Lawsuits Against Public Participation ("SLAPP").  New York's law, commonly known as an "anti-SLAPP" law, is "aimed at broadening the protection of citizens facing litigation arising from their public petition and participation."  *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, No. 20-CV-7269, 2021 WL 3271829, *12 (S.D.N.Y. July 30, 2021) (quoting *Mable Assets, LLC v. Rachmanov*, 192 A.D.3d 998, 1000 (2d Dep't 2021)).  SLAPP lawsuits "are characterized as having little legal merit but are filed nonetheless to burden opponents with legal defense costs and the threat of liability and to discourage those who might wish to speak out in the future." *Mable Assets, LLC*, 192 A.D.3d at 999-1000.

New York's anti-SLAPP statute permits "[a] defendant in an action involving public

---

[12] To the extent Plaintiff claims he also asserted an "alternative cause of action against [Defendant] AAA for aiding and abetting" the Defendant Authors, *see* Dkt. No. 45 at 18, this cause of action must also be dismissed in light of the dismissal of Plaintiff's unfair competition claim.

petition and participation" to recover costs and attorney's fees from "any person who commenced or continued such action . . . upon a demonstration . . . that the action involving public petition and participation was commenced or continued without a substantial basis in fact and law and could not be supported by a substantial argument for the extension, modification or reversal of existing law." N.Y. C.R.L. § 70-a(1). An "action involving public petition and participation" includes, as relevant here, any lawsuit based on "(1) any communication in . . . a public forum in connection with an issue of public interest; or (2) any other lawful conduct in furtherance of the exercise of the constitutional right of free speech in connection with an issue of public interest." *Id.* § 76-a(1)(a). The statute provides that "'public interest' shall be construed broadly, and shall mean any subject other than a purely private matter." *Id.* § 76-a(1)(d).

Defendants are entitled to an award of costs and attorney's fees under New York's anti-SLAPP statute. Initially, the conduct in this action involves "lawful conduct in furtherance of the exercise of the constitutional right of free speech" inasmuch as it centers on Defendants' publication of a scholarly writing in an academic journal. N.Y. C.R.L. § 76-a(1)(a)(2); *see Keyishian v. Bd. of Regents of Univ. of State of N.Y.*, 385 U.S. 589, 603 (1967) (noting that academic freedom is "a special concern of the First Amendment").[13] Additionally, this conduct—the publication of academic research in a publicly available journal—plainly goes beyond "a purely private matter" and concerns an issue of "public interest." N.Y. C.R.L. § 76-a(1)(d).

The Court also finds that Plaintiff has commenced this unfair competition action without a substantial basis in fact and law and for the purpose of burdening Defendants with legal defense

---

[13] Alternatively, the publication of the Defendant Authors' paper in Defendant AAA's online and publicly available journal constitutes a "communication in a place open to the public or a public forum." N.Y. C.R.L. § 76-a(1)(a)(1).

costs.  As discussed more extensively above, Plaintiff has failed to plead any facts supporting even the most fundamental elements of his single cause of action, despite submitting an amended complaint spanning 113 pages and 419 numbered paragraphs.  Although this Court is aware that it must provide reasonable allowances to *pro se* litigants because of their lack of legal training, the Court notes that Plaintiff is a professor at Syracuse University, with a Ph.D. in Business, and an experienced litigant.  Indeed, he has previously litigated at least two other actions, and has been sanctioned by New York courts for what was determined to be frivolous and vexatious conduct. *See Harris v. Ward Greenberg Heller & Reidy, LLP, et al.*, No. 6:15-CV-6615, 2016 U.S. Dist. LEXIS 90858 (W.D.N.Y. July 12, 2016) (granting the defendants' motions for sanctions in part based on Plaintiff's "frivolous filings" and "vexatious conduct" and issuing an anti-filing injunction).

    Plaintiff's intentions are further illustrated in an email[14] he sent to the Defendant Authors shortly before the commencement of this action:

        I am writing to you at this time because I have decided that I cannot

---

[14]  Plaintiff correctly argues that this email (which was submitted as an attachment to a pre-motion letter from the Defendant Authors) can not be considered as part of Defendants' motions to dismiss.  *See* Dkt. No. 46 at 29; *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007) (limiting court's review on a motion to dismiss to "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference").  However, this evidence is being considered here solely for the purpose of determining Defendants' eligibility for costs and attorney's fees under the anti-SLAPP statute—not as part of the motions to dismiss.

    Plaintiff does not dispute the authenticity of this email, but does argue that it was "a letter sent in pursuit of settlement negotiations" and, therefore, inadmissible under Rule 408 of the Federal Rules of Evidence.  Rule 408 provides that evidence pertaining to settlement negotiations may not be used "to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid. 408(a).  Here, Defendants are not offering this evidence to prove or disprove the validity or amount of Plaintiff's unfair competition claim, but instead to support their position that Plaintiff brought this lawsuit to burden them with legal defense costs and the threat of liability.

allow your plagiarism and fraud to go unchecked.  To that end, on
9/8/2020 I filed an action in federal court in Syracuse, NY (copies
of the papers filed with the court are attached) though I have not yet
served you with papers.

* * *

There are a few things you should consider in deciding whether or
not to settle with me.  First, there is the question of what it will cost
you to lose, which is clearly set out at the end of my complaint,
which can go into the millions of dollars.

* * *

Proof of knowing intent to defraud the public – readers of premier
accounting journals – is all that is needed for punitive damages; up
to ten times actual damages, pursuant to NY law.

There is the question of legal fees.  Last time I brought a lawsuit, I
took it to the Supreme Court of the U.S.  As part of that suit, I won
an appellate decision, and changed the law.  I suppose that it would
cost me about $5,000 to take this action that far.  I heard that the
other parties ended up with legal fees a bit over $400,000.  And I
will appeal anything that I think is not completely correct and
justifiable in any decision of any court.

Perhaps, you think AAA will defend you.  Maybe.  But, if I were
advising them, I'd advise them to throw you all under the bus.

* * *

Perhaps, you think your universities will defend you. . . .  If I were
advising your universities, I'd advise them to, guess what, throw
you under the bus; refuse to pay any legal fees for you and start an
ethics investigation which will lead to  … Well, you can figure out
what comes after that.

* * *

I plan to serve you with papers on or about thirty days after the
filing date for the federal action, on or about October 8, 2020.  If
you want to settle, and it will not be cheap, then it would be in your
best interest to do so before the action officially starts.

Dkt. No. 20-1 at 1-3.  Plaintiff's attempted use of the threat of crippling legal fees to intimidate

the Defendant Authors into complying with his demands, and his subsequent commencement of

this meritless litigation, appear to be precisely the type of conduct against which New York's

anti-SLAPP statute was designed to protect.

Accordingly, Defendants' requests under New York Civil Rights Law § 70-a for costs and

attorney's fees incurred in defending this action are granted.

### IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that the motion to dismiss of Defendants De Simone, Ege, and Stromberg (Dkt. No. 35) is **GRANTED**; and the Court further

**ORDERS** that the motion to dismiss of Defendant AAA (Dkt. No. 34) is **GRANTED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendants' favor and close this case; and the Court further

**ORDERS** that Defendants' motions for costs and attorney's fees is **GRANTED**; and the Court further

**ORDERS** that Defendants submit a detailed accounting of their costs and attorney's fees incurred in this action **within 10 days** from the filing of this Memorandum Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 24, 2021
     Albany, New York

**Mae A. D'Agostino**
**U.S. District Judge**

31